# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ANGEL NEGRON (N80312),** | ) | |
| **Petitioner,** | ) | **12 C 9604** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **RICK HARRINGTON, Warden,** | ) | |
| **Menard Correctional Center,** | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* petitioner Angel Negron (prisoner number N80312) was a janitor in an apartment building in Chicago's Edgewater neighborhood. Six-year-old K.R. and her seven-year-old sister, G.R, lived in an apartment in the building. The jury found Negron guilty of two counts of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse with respect to G.R. The trial court sentenced Negron to consecutive prison terms of sixty years and forty years for the two counts of aggravated criminal sexual assault plus concurrent prison terms of seven years for each of the two counts of aggravated criminal sexual abuse, to be served consecutive to the sentences for the assault convictions. Negron has petitioned this court for a writ of habeas corpus under 28 U.S.C. § 2254 arguing, among other things, that the evidence was insufficient to support the jury's verdict. For the following reasons, the petition is denied.

### I. BACKGROUND

The court begins by summarizing the facts and procedural posture. It will presume that the state court's factual determinations are correct for the purposes of habeas review as Negron neither contests them nor points to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The following facts and procedural posture are drawn from the state court record (Dkt. 13) and the Illinois Appellate

Court's orders addressing Negron's direct appeal, *People v. Negron*, No. 1-06-2624 (Ill. App. Ct. June 24, 2008) (unpublished order, as modified afer the denial of rehearing) (Dkt. 13-1), and collateral appeal, *People v. Negron*, No. 1-09-3185 (Ill. App. Ct. Sept. 30, 2011) (unpublished order) (Dkt. 13-14).

## A.      Negron's Trial

The evidence adduced at trial established that in 2004, Negron and his wife, Ruth Negron, lived in an apartment on the fourth floor of a building located at 5727 North Winthrop in Chicago.  Negron provided building maintenance, and his wife managed the building. K.R. and G.R. lived in an apartment on the second floor of the same building with their parents and siblings.  K.R. and G.R. were friendly with Negron's wife and often went to the Negrons' apartment to have meals, get their hair done, or watch movies.

### 1.      K.R. and G.R

Both K.R. and G.R. testified at trial.  At that time, they were eight and ten years old, respectively.  According to K.R., she visited Negron's apartment with G.R. sometime after December 2003.  Negron told both girls to lie on the floor and take off their pants, and Negron touched K.R.'s anus with his penis.  Later that same day, Negron took the girls into the bedroom. Negron laid K.R. on the bed, pulled her pants down, took off his own pants and touched her vagina with his penis.  K.R. testified that she closed her eyes and did not see anything happen to G.R., who was also on the bed.  Negron then showed the sisters three guns, two of which K.R. believed were toys, and said he would kill their parents if they told anyone about the incident. Nevertheless, about three days later, K.R. told her older brother that Negron had touched her while she was at his apartment.

G.R. testified that Negron touched her on four different occasions while she was in his apartment. On the first occasion, Negron sat next to her on his couch while she and several other children, including K.R., watched a movie. According to G.R. Negron put his hand into her pants from the waistband and touched her "in [her] private part" in the front "[w]here [she] go[es] pee." Dkt. 13-1 at 3. She also used hand gestures to indicate that Negron rubbed her vagina.

On the second occasion, G.R. and K.R. were again sitting on the couch with Negron. Negron used his hand to touch G.R.'s vagina over her clothes. G.R. saw Negron do the same thing to K.R. The third incident took place in Negron's bedroom. Negron put G.R. and K.R. on the bed, removed their clothing, and tried to insert his penis into G.R.'s vagina. Negron also touched K.R.'s vagina with his penis. After this incident, Negron twice G.R. not to tell anyone or he would kill her parents, and showed G.R. bullets and three or four guns. Although Negron told G.R. that one of the guns was a toy, she thought that the other guns were real. On the fourth occasion, G.R. was in Negron's apartment with K.R. and their brother, J.R. Negron kissed G.R. and K.R. on their mouths while they were in the back of the apartment near the bathroom.

## 2.      Rebecca Barrera

Rebecca Barrera, G.R. and K.R.'s mother, testified that on February 19, 2004, her son, J.R., reported what K.R. had told him about Negron. Barrera confronted Negron's wife, Ruth, who became angry and said that the Barrera family might have to move from their apartment. Barrera then called the police, who took her and her daughters to Children's Memorial Hospital. The following day, Barrera took her daughters to the Children's Advocacy Center, where they were examined.

### 3. Dr. Michelle Lorand

Dr. Michelle Lorand testified that she examined G.R. at the Children's Advocacy Center on February 20, 2004. She stated that G.R. told her that a man had reached under her clothes and touched her vagina and her anus with his hand. G.R. also said that the man had touched her vagina with his tongue and his penis and that he had inserted his finger and his penis into her vagina. Dr. Lorand's examination revealed that G.R. had hemorrhaging and scar tissue around her hymen that was consistent with a penetration-type trauma to the hymen. These findings were also consistent with the two types of penetration described in the history provided by G.R. Dr. Lorand testified that she concluded to a reasonable degree of medical certainty that G.R. had been sexually abused.

### 4. Dr. Afsoon Kamiri

Dr. Afsoon Kamiri testified that she examined K.R. at the Children's Advocacy Center. That examination revealed no abnormalities in K.R.'s labia, hymen, or anus. Dr. Karimi stated that during K.R.'s interview, she was crying and shaky when asked about whether someone had touched her.

### 5. R.R.

R.R., who was not related to G.R. and K.R., testified that in August of 1986, she was seven years old and was friends with Negron's daughter, Zaida, who lived in a nearby building. R.R. stated that on August 16, 1986, she was in Negron's apartment with Zaida. After Zaida was sent to the store, Negron forced R.R. to go into his bedroom where he showed her pornographic books and movies. Negron then placed R.R. on the bed, pulled down her pants and underwear, took off his own clothes, and touched his penis against her vagina. After Zaida entered the

room, Negron told R.R. to put her clothes on and leave the apartment, and warned her that if she

told her mother, he would kill her mother and her brothers. Several months later, R.R. told a

teacher about the incident and R.R. eventually testified against Negron in court.

### 6.     Officer Wagner

Officer Michael Wagner responded to Barrera's telephone call on February 19, 2004, and

went to Negron's apartment. He found an unloaded Marksman model 1710 pellet gun leaning

against the wall in the hallway of Negron's apartment. Wagner's partner found a toy replica of a

silver Colt 45. Wagner testified that the replica could not be fired, and he did not know

whether the pellet gun was operable. Wagner arrested Negron and recovered the toy replica and

the pellet gun. Detective Mark DiMeo searched Negron's apartment the following day and

recovered a black pellet gun and a separate bag of pellets. DiMeo did not test the pellet gun to

determine whether it was capable of firing.

### 7.     The Defense Case

The defense theory was that G.R. and K.R.'s family fabricated the girls' stories to avoid

eviction from their apartment. To support this theory, Negron called William Robert Lucas, who

owned the apartment building. Lucas testified that he had received complaints that Barrera's

children had been running in the hallways, playing on the stairs, and disturbing other residents.

Lucas told Ruth Negron to inform Mrs. Barrera that she would be evicted unless she controlled

her children. Lucas also stated that the Barrera family continued to live in the building until the

summer of 2004.

Ruth Negron testified that, before her husband's arrest on February 19, 2004, she warned Barrera that she had to control her children or the family would be evicted. According to Negron, Negron was arrested later that night.

**B.      The Verdict and Negron's Sentencing**

The jury found Negron guilty of two counts of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse with respect to G.R.  The trial court sentenced Negron to prison terms of sixty years and forty years, to be served consecutively, for the two counts of aggravated criminal sexual assault.  It also sentenced Negron to concurrent prison terms of seven years for each of the two counts of aggravated criminal sexual abuse, to be served consecutive to the sentences for the assault convictions.

**C.      Negron's Direct Appeal**

Negron appealed with the assistance of counsel, contending:

1        The State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault because the State did not present evidence that he inserted his finger into G.R.'s vagina;

2.       The trial court erred in admitting evidence of another crime (the R.R. incident) to show his propensity to commit the charged offense and to show modus operandi;

3.       The trial court's failure to contemporaneously instruct the jury that other crimes evidence could only be considered for a limited purpose deprived him of a fair trial;

4.       The prosecutor committed misconduct by: (a) coaching a witness during trial; and (b) making improper arguments in closing to inflame the jury with sympathy for the victims and by injecting herself into the argument;

5.       His due process rights were violated when the trial court failed to instruct the jury that it could consider G.R. and K.R.'s ages when evaluating their testimony; and

6.       When calculating the fines owed by him, the trial court erred when it failed to give him a credit of $5 for each day of pretrial custody.

Ex. B (Negron's Direct Appeal Brief) (Dkt. 13-2); Ex. C (State's Direct Appeal Brief) (Dkt. 13-3); Ex. D (Negron's Direct Appeal Reply Brief) (Dkt. 13-4). The Illinois Appellate Court affirmed on May 27, 2008. Ex. E (Initial Rule 23 Order on Direct Appeal) (Dkt. 13-5). Negron sought rehearing, Ex. F (Petition for Rehearing on Direct Appeal) (Dkt. 13-6), which was denied in an order modifying the original appellate order, Ex. A (Dkt. 13-1).

As relevant here, the Illinois Appellate Court held that the evidence was sufficient to support Negron's convictions and that evidence of Negron's earlier crime was admissible under 725 Ill. Comp. Stat. § 5/115-7.3 because it was factually similar, and its probative value outweighed any prejudicial effect. *Id*. at 11-12, 16-17. It also found that Negron had forfeited his jury instruction claim by failing to request an instruction advising the jury that it could consider G.R. and K.R.'s ages and by not raising it in a post-trial motion. Ex. A at 20-21. It then rejected the claim on the merits, explaining that the girls were obviously young, the prosecution and defense counsel mentioned their ages several times during the trial, and the instruction on witness credibility advised the jury that they were the judges of credibility and could consider the witnesses' ability and opportunity to observe, their memory, their manner while testifying, any interest, bias, or prejudice they may have, and the reasonableness of the testimony in light of all the evidence. *Id*. at 21. Finally, with regard to the prosecutor's allegedly improper comments in closing, the Illinois Appellate Court held that Negron forfeited any claim because he did not object during the closing argument and then raise the issue in a post-trial motion. *Id*. at 22-23. *Id*. at 22-25.

Negron's ensuing petition for leave to appeal ("PLA") in the Illinois Supreme Court repeated his arguments from the appellate court. Ex. G. The state supreme court denied the PLA on March 25, 2009. Ex. H.

**D.     Negron's State Post-Conviction Appeal**

On July 28, 2009, Negron filed a *pro se* post-conviction petition pursuant to 725 Ill. Comp. Stat. § 5/122-1, *et seq.*, in the Circuit Court of Cook County asserting:

1.     He was actually innocent because the Barrera family fabricated the alleged abuse since they were about to be evicted from their apartment, the testimony of the State's witnesses was uncorroborated, and no physical evidence linked him to the offense;

2.     His trial attorney was ineffective for failing to properly investigate the victims' motive to falsely accuse him; and

3.     His appellate counsel from his direct appeal was ineffective for failing to raise his trial counsel's ineffectiveness on appeal.

Ex. I at C46-50 (Post-Conviction Common Law Record). In support, he presented an affidavit from Lucas, the building owner, alleging that the Barrera family fabricated the abuse to save themselves from being evicted and that Rebecca Barrera told him that her then-husband had abused the girls.

On October 6, 2009, the trial court dismissed the petition as frivolous in a written order. *Id*. at C58-66. The trial court rejected Negron's actual innocence claim, stating that actual innocence requires evidence demonstrating total exoneration, not that the evidence at trial was insufficient to convict beyond a reasonable doubt. Next, it found that Negron's ineffective assistance of trial counsel claim was frivolous because counsel presented Mr. and Mrs. Lucas to support his eviction theory. Based on this finding, it held that appellate counsel could not have been ineffective for failing to raise a doomed argument. In addition, it held that the Lucas

affidavit submitted with Negron's post-conviction petition was cumulative and did not present anything new, and that Negron had failed to support his petition with any new evidence demonstrating his innocence.

Negron appealed to the Illinois Appellate Court, with the assistance of counsel. He argued (as relevant to his § 2254 petition) that his ineffective assistance and actual innocence claims stated the gist of a constitutional claim because trial counsel "[i]nexplicably" failed to question Rebecca Barrera about her alleged statement to Lucas that her then-husband abused the girls and was unable to question Lucas about allegedly inconsistent statements made by G.R. and K.R. because he did not lay a proper foundation. Ex. K (Post-Conviction Appeal Brief); Ex. L (State's Post-Conviction Appeal Brief); Ex. M (Negron's Post-Conviction Reply Brief). On September 30, 2011, the state appellate court affirmed, holding that the trial court correctly found that Negron's postconviction petition was frivolous because he failed to support it with a notarized affidavit, records, or other evidence as required by the Illinois Post-Conviction Hearing Act. Ex. N at 5-6 (*People v. Negron*, No. 1-09-3185 (Ill. App. Ct. 2011) (unpublished order).

Negron filed a PLA in the Illinois Supreme Court raising his ineffective assistance and actual innocence claims. Ex. O. The Illinois Supreme Court denied the PLA on January 25, 2012. Ex. P.

**E.       Negron's Federal Habeas Petition**

Negron signed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on

November 27, 2012.   He raises six claims:[1]

1         The State failed to prove him guilty beyond a reasonable doubt of aggravated
          criminal sexual assault because the State did not present evidence that he inserted
          his finger into G.R.'s vagina;

2.        The trial court erroneously applied 725 Ill. Comp. Stat. § 5/115-7.3 by admitting
          evidence of another crime (the R.R. incident) to show Negron's propensity to
          commit the charged offense and erroneously found that R.R.'s testimony was
          admissible because it showed modus operandi;

3.        The trial court's failure to contemporaneously instruct the jury that other crimes
          evidence could only be considered for a limited purpose deprived him of a fair
          trial;

4.        The prosecutor committed misconduct by making improper arguments in closing
          to inflame the jury with sympathy for the victims;

5.        His due process rights were violated when the trial court failed to instruct the jury
          that it could consider G.R. and K.R.'s ages when evaluating their testimony; and

6.        His trial counsel was ineffective for failing to elicit evidence"that would have
          shown that the complaining witnesses contradicted themselves and that the
          children's father had been abusing them."

Dkt. 1 at 5-7.

---

[1]  In his § 2254 petition, Negron's third claim is that the "trial court improperly instructed
the jury."  Dkt. 1 at 6.  In his fifth claim, Negron contends that the jury was not instructed to
consider G.R. and K.R.'s age when evaluating their testimony.  The respondent has grouped
these two arguments together.  Given Negron's *pro se* status, the court finds that it is reasonable
to interpret his petition as raising the two distinct jury instruction arguments he presented to the
state courts.  It thus believes that Negron is raising six claims, not five as the respondent
suggests.

## II.  DISCUSSION

As discussed below: (1) Claim 1 (sufficiency of the evidence) is meritless; (2) Claim 2 (admissibility of other crimes evidence) is not cognizable in a federal habeas proceeding (*i.e.*, it is not the kind of claim that can be adjudicated by a federal habeas court); (3) Claim 3 (the failure to give a jury instruction about other crimes evidence), Claim 4 (the prosecutor's closing argument), Claim 5 (the failure to give an instruction about G.R. and K.R.'s age), and Claim 6 (ineffective assistance of trial counsel) are procedurally defaulted under the independent and adequate state ground doctrine and, in any event, fail on the merits; and (4) none of the exceptions to procedural default apply.

### A.    Claim 1 (Sufficiency of the Evidence)

#### 1.    Standard of Review

A habeas petitioner is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).  A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."  *See Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case.  *See id*. at 407.  A state court's application of

Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011) ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable").

## 2. Negron's Arguments

At the time Negron was prosecuted, a defendant committed criminal sexual assault if he "committ[ed] an act of sexual penetration by the use of force or threat of force," 720 Ill. Comp. Stat. § 5/12-13 (version effective January 1, 1998, through June 1, 2008), and committed aggravated criminal sexual assault if he committed criminal sexual assault and "caused bodily harm . . . to the victim." 720 Ill. Comp. Stat. § 5/12-14 (version effective January 1, 2003, through June 30, 2011). Negron contends he cannot be liable under either statute because the evidence was insufficient to show that he inserted his finger into G.R.'s vagina.

On direct appeal, the Illinois Appellate Court rejected Negron's sufficiency of the evidence claim. It relied on *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and identified the standard as "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." It then reviewed G.R.'s testimony about how Negron touched her, as detailed in the summary of facts above. Next, it held that Dr. Lorand's testimony that G.R. told her that a man had touched her vagina under her clothes and inserted his finger into her vagina was admissible under Illinois's exception to the hearsay rule for statements made to medical personnel for purposes of diagnosis or treatment, 725 Ill. Comp. Stat. § 5/115-13. It then noted that Dr. Lorand testified that her examination of G.R. showed she had scar tissue damage to her hymen consistent with G.R.'s description of what had happened. Based on this evidence, it

concluded that a rational trier of fact could have concluded, beyond a reasonable doubt, that Negron was guilty of the aggravated criminal sexual assault of G.R. by inserting his finger into her vagina. Ex. A at 11-12.

The Supreme Court's decision in *Jackson v. Virginia* governs this court's evaluation of the state courts' rejection of Negron's sufficiency of the evidence claim. In its opinion, the Illinois Appellate Court expressly relied on *Jackson* and correctly identified the standard announced in that case. Thus, its decision was not "contrary to" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). *See Hardy v. Cross*, — U.S. —, 132 S.Ct. 490, 494 (2011) (when a state court identifies the correct Supreme Court standard, its decision is not "contrary to" clearly established federal law); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) (a "decision applying the correct legal rule to the facts of a case is not 'contrary to' within the meaning of §2254(d)(1).").

The court next considers whether the decision was "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). In his § 2254 petition, Negron asserted that the State did not present any evidence showing he inserted his finger into G.R.'s vagina. In his response to the answer filed by the respondent, he contends "no evidence physical or otherwise showed that petitioner committed the alleged offense." Dkt. 14 at 2. Negron's position is not supported by the record. The State did in fact, present evidence, detailed above, showing that Negron committed an act of sexual penetration by the use of force and caused bodily harm to G.R.

First, "any intrusion, however slight" of any part of the body of one person into the sex organ of another person is penetration under the aggravated criminal sexual assault statute.

*People v. Bofman*, 670 N.E.2d 796, 800 (Ill. App. Ct. 1996). G.R. testified that Negron touched her in a way that clearly satisfies this standard. She also testified that Negron showed her guns and threatened to kill her parents. Negron does not and cannot argue that G.R., who was seven years old at the time of the incidents, consented. *See People v. Riley*, 228 N.E.2d 190, 192 (Ill. App. Ct. 1967) ("[f]orce is always present" in sex acts involving those incapable of consent). Second, Dr. Lorand testified that G.R. had hemorrhaging and scar tissue around her hymen consistent with a penetration-type trauma.

Controlling Supreme Court precedent holds that habeas relief is not available if the evidence, when viewed in the light most favorable to the prosecution, would allow a "rational trier of fact . . . [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The evidence presented during Negron's trial easily satisfies this standard. Accordingly, the state courts' rejection of Negron's sufficiency of the evidence claim was not "an unreasonable application of" the clearly established law announced in *Jackson*. Thus, Negron's sufficiency of the evidence claim fails.

**B.     Cognizability – Claim 2 (Admissibility of Other Crimes Evidence)**

In Claim 2, Negron argues that the trial court erred in admitting evidence of another crime (R.R.'s testimony that Negron touched her vagina with his penis in 1986) to show his propensity to commit the charged offenses against G.R.) and to show modus operandi. In the state court proceedings, Negron objected to the admission of R.R.'s testimony, asserting that the alleged 1986 offense was not sufficiently similar to the alleged G.R. offense, the offenses were 18 years apart and not so distinctive that they bore the earmark of a single person, and the evidence was more prejudicial than probative. *See* Ex. B. (Negron's Direct Appeal Brief) (Dkt.

13-2) at 16-23.        Under the version of 725 Ill. Comp. Stat. § 5/115-7.3 in effect at the

relevant time, evidence of other crimes was admissible to show propensity to commit the

charged offense if the charged offense was one of the sex offenses listed in the statute.  Ex. A at

15 (Dkt. 13-1) (Modified Rule 23 Order on Direct Appeal).[2]  Negron was charged with

aggravated criminal sexual assault and aggravated criminal sexual abuse against G.R., and

"committed aggravated criminal sexual abuse on R.R. in 1986."  *Id*.  Aggravated criminal sexual

assault and aggravated criminal sexual abuse are both included in § 115-7.3.  Because the

offenses were in the ambit of § 115-7.3, the trial court was required to balance the probative

value of the other crimes evidence against undue prejudice to Negron.  The Illinois Appellate

Court found that the trial court properly did so and thus rejected Negron's challenge to the

admission of R.R.'s testimony to show propensity.  Alternatively, it found that even if the trial

court also admitted the evidence to show modus operandi, any error was harmless as the jury was

not instructed that R.R.'s testimony could be considered to show modus operandi and the State's

closing argument referred only to propensity.[3]

_____

[2] Illinois law differs from federal law, which provides that evidence of a defendant's prior bad acts is inadmissible if it is offered to show propensity (*i.e.*, that the defendant's alleged conduct conformed to his previous behavior).  *See United States v. Conley*, 291 F.3d 464, 472 (7th Cir. 2002), citing Fed. R. Evid. 404(b); *see also United States v. Rollins*, 301 F.3d 511, 519 (7th Cir. 2002) (under the federal rules, "[e]vidence of other crimes must (1) be directed toward establishing something other than the defendant's propensity to commit the charged offense (here, the identity and modus operandi of the perpetrator), (2) show sufficient similarities in time and manner to establish relevance to the charged conduct, (3) be sufficient to support a jury finding that the defendant committed the similar act, and (4) have probative value that is not substantially outweighed by the danger of prejudice to the criminal defendant.") (internal citations omitted).

[3] The Illinois Appellate Court did not reach the merits of Negron's arguments about modus operandi as it assumed, *arguendo*, that the other acts evidence was improperly admitted to show modus operandi, and then found that any error was harmless.  Under Illinois law,

A federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, — U.S. —, 131 S. Ct. 13, 16 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). The "admissibility of evidence is generally a matter of state law." *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994). Nevertheless, this court may reexamine a state court's determination of a state law question if it rises to the level of a violation of due process. *See generally Middleton v. McNeil*, 541 U.S. 433 (2004); *see also United States ex rel. Byrd v. Welborn*, No. 92 C 0087, 1992 WL 293300, at *1 (N.D. Ill. Oct. 13, 1992) ("The question of the admissibility of the hearsay and other crimes evidence was a matter of state law, and will not result in granting a habeas petition unless a federal constitutional right was violated or unless they rendered the trial fundamentally unfair.").

This does not help Negron, as he did not couch his objection to R.R.'s testimony argument in federal constitutional terms through one full round of state court proceedings. Thus, any due process claim based on that testimony would be procedurally defaulted. *See Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007) (to avoid procedural default, a petitioner must "alert . . . the state court to the federal nature of his claim in a manner sufficient to allow that court to address the issue on a federal basis").

In any event, the admission of evidence violates a defendant's right to a fundamentally fair trial under the due process clause if the alleged "error . . . produced a significant likelihood

evidence of a pattern of behavior is a proper basis for the admissibility of such evidence if identity is at issue. *See People v. Barbour*, 106 Ill. App. 3d 993, 1000 (Ill. App. Ct. 1982). This is precisely what was at issue with respect to R.R.'s testimony.

that an innocent person has been convicted." *Howard v. O'Sullivan*, 185 F.3d 721, 724 (7th Cir.

1999). Given the evidence discussed above in connection with Negron's sufficiency of the

evidence claim, he cannot satisfy this standard. Moreover, the Seventh Circuit has held that

"[t]he introduction of improper evidence of other crimes will not support a grant of [a]

petitioner's writ of habeas corpus." *Stomner v. Kolb*, 903 F.2d 1123, 1129 (7th Cir. 1990).

Thus, Negron is not entitled to habeas relief based on Claim 2.

**C.     The Independent and Adequate State Ground Doctrine – Claim 3 (Failure to Give a
        Jury Instruction about Other Crimes Evidence), Claim 4 (The Prosecutor's Closing
        Argument), Claim 5 (The Failure to Give an Instruction about G.R. and K.R.'s
        Age), and Claim 6 (Ineffective Assistance of Trial Counsel)**

Under the independent and adequate state ground doctrine, this court may not "review a

question of federal law decided by a state court if the decision of that court rests on a state law

ground that is independent of the federal question and adequate to support the judgment."

*Coleman v. Thompson*, 501 U.S. 722, 729 (1991), superseded by statute on other grounds, 28

U.S.C. § 2254(b)(2). A state law ground is independent when "the state court actually relied on

a state rule sufficient to justify its decision" and is adequate when the state court applies the rule

"in a consistent and principled way." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382–83 (7th Cir.

1990). For the following reasons, Claims 3, 4, 5, and 6 are procedurally defaulted as they are

barred by an independent and adequate state ground, and no exceptions to procedural default

excuse the default.

**1.     Forfeited Claims — Claims 3, 4, and 5**

The state court held that Negron had forfeited Claims 3, 4, and 5, and in the alternative,

rejected these claims on the merits. Specifically, in Claim 3 of his § 2254 petition, Negron

argues that the failure to give a jury instruction about other crimes evidence deprived him of a

fair trial.  The state court found that this claim was forfeited as Negron neither made a contemporaneous objection nor raised the issue in a post-trial motion.  It then held that the claim also failed on the merits as no reversible error occurred, given that the jury in fact received the Illinois Pattern Instruction for other crimes, as well as an instruction about evidence introduced for a limited purpose.

In Claim 4 of his § 2254 petition, Negron argues that the prosecutor committed misconduct by making statements in the closing argument that were designed to inflame the jury with sympathy for the victims.  As with Claim 3, the state court found that Negron forfeited this claim as he did not make a contemporaneous objection or raise the issue in a post-trial motion.  Alternatively, it held that the claim failed on the merits because a prosecutor may comment on the evidence in a way that does not reflect favorably on the defendant if the comments are based on competent, relevant evidence.

In Claim 5 of his § 2254 petition, Negron argues that the failure to give an instruction about G.R. and K.R.'s age violated his right to due process.  The state court found that Negron had forfeited this claim by failing to request an instruction advising the jury that it could consider G.R. and K.R.'s ages and by not raising it in a post-trial motion.  It then rejected the claim on the merits, stating that even though the instruction did not specifically mention age, the girls were obviously young, the prosecution and defense counsel mentioned their ages several times during the trial, and the jury was instructed that they were the judges of credibility and could consider (among other things) the witnesses' ability and opportunity to observe, their memory, and the reasonableness of the testimony in light of all the evidence.

Forfeiture is an independent and adequate state law ground. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997); *see also Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009) (waiver is an independent and adequate state law ground). The Illinois Appellate Court's holdings clearly rested on a finding that Negron did not properly preserve Claims 3, 4, and 5 as required by state law. Thus, those claims are barred by the independent and adequate state ground doctrine. The Illinois Appellate Court's alternative rejection of the claims on the merits does not affect this conclusion as the Seventh Circuit "consistently [has] held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits." *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010). That is what occurred here. Accordingly, Negron cannot obtain federal habeas relief based on Claims 3, 4, and 5.

### 2.      The Affidavit Rule – Claim 6

In Claim 6 of his § 2254 petition, Negron argues that his trial counsel was ineffective for failing to elicit evidence "that would have shown that the complaining witnesses contradicted themselves and that the children's father had been abusing them." Dkt. 1 at 7. On post-conviction review, the state court rejected this argument because Negron failed to comply with the Illinois Post-Conviction Hearing Act as he did not submit a notarized affidavit, records, or other supporting evidence.

The failure to submit affidavits as required by the Illinois Post-Conviction Hearing Act is an independent and adequate state basis for rejecting an ineffective assistance of counsel claim. *Thompkins v. Pfister*, 698 F.3d 976, 986-87 (7th Cir. 2012) (the state supreme court's reliance on Illinois' affidavit rule when rejecting an ineffective assistance claim was an independent and

adequate ground barring federal consideration of that claim). The Illinois Appellate Court's order denying relief based on the ineffective assistance of counsel rested exclusively on the affidavit rule. Thus, Claim 6 is barred by an independent and adequate state ground. *See Savage v. Robert*, No. 12 C 1802, 2013 WL 1789396, at *6-7 (N.D. Ill. Apr. 26, 2013) (the Illinois Appellate Court's rejection of the petitioner's ineffective assistance of counsel claim based on the affidavit rule was an independent and adequate procedural ground); *United States ex rel. Davis v. Yurkovich*, No. 12 C 6610, 2012 WL 6568192, at *5 (N.D. Ill. Dec. 17, 2012) (same).

### 3. Exceptions to Procedural Default

The independent and adequate state ground doctrine is a form of procedural default. *United States ex rel. Adkins v. Akpore*, No. 06 C 4834, 2013 WL 2297045, at *6 (N.D. Ill. May 24, 2013). A federal court may not grant relief on a procedurally defaulted claim unless a petitioner establishes cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrates that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750 (1991).

As a general rule, cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 n.24 (1999). Nothing in the record before the court indicates that an objective factor prevented Negron from raising any of his defaulted claims properly. Thus, Negron cannot establish cause that excuses his defaults. As he cannot do so, the court need not address the prejudice prong. *See Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010).

The court next turns to the fundamental miscarriage of justice exception, which applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have convicted him. *Id*. To satisfy this demanding standard, Negron "must support the innocence claim with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Morales v. Johnson*, 659 F.3d 588, 606 (7th Cir. 2011) (internal quotations omitted). Negron contends that G.R.'s father was responsible for the hemorrhaging and scar tissue around her hymen diagnosed by Dr. Lorand. However, he has not pointed to new evidence showing that he is actually innocent. Thus, this exception to procedural default is inapplicable.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential

(compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons stated in this order, the court finds that Negron has not made a substantial showing of the denial of a constitutional right as he has not demonstrated "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient chance of the denial of a constitutional rights that he deserves encouragement to proceed further." *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Accordingly, the court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the above reasons, Angel Negron's request for a writ of habeas corpus under 28 U.S.C. § 2254 is denied. The court declines to certify any issues for appeal under 28 U.S.C. § 2253(c). The clerk is directed to enter a Rule 58 judgment and terminate this case.

ENTER:

_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED: October 14, 2013